James F. Kahn - 003063
**BANKRUPTCY LEGAL CENTER™**
**LAW OFFICE OF JAMES F. KAHN, P.C.**
301 E. Bethany Home Rd., Suite C-195
Phoenix, AZ 85012-1266
Phone: 602-266-1717
Fax: 602-266-2484
Email: James.Kahn@azbar.org

Kevin K. McQuillan - Illinois ARDC # 1869825
**MCQUILLAN LAW OFFICE LLC**
1155 S. Washington St., Suite 202
Naperville, IL 60540
Ph: 630-355-5950
Fax: 630-596-0862
Email: kevin@mcq-law.com
Attorneys for Ruchir Patel

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>NEAL LEBARON JONES<br>dba DESERT VISTA ORTHODONTICS<br>fdba SAUK VALLEY ORTHODONTICS<br>4535 PASEO BRAZOS SIERRA VISTA, AZ 85635<br>SSN: xxx-xx-4708<br><br>AMY MELISSA JONES<br>4535 PASEO BRAZOS SIERRA VISTA, AZ 85635<br>SSN: xxx-xx-3053<br>        Debtors. | In Proceedings Under Chapter 7<br><br>Case No.: 4:15-bk-00508-BMW |
| RUCHIR PATEL,<br>        Plaintiff,<br>v.<br><br>NEAL LEBARON JONES and the community composed of NEAL LEBARON JONES and AMY MELISSA JONES<br>        Defendant | Adversary Case No. 4:15-ap-00283-BMW<br><br>**AMENDED ADVERSARY COMPLAINT TO PRECLUDE THE DISCHARGE OF CERTAIN DEBTS AND TO DENY ANY DISCHARGE TO DEBTOR** |

NOW COMES the Plaintiff, RUCHIR PATEL, by counsel, MCQUILLAN LAW OFFICE LLC, and for his Complaint to preclude the discharge of certain debts and to preclude the discharge of Defendant pursuant to Sections 523 and 727 of the Bankruptcy Code, states as follows:

## JURISDICTION

1. This is an action to recover unpaid wages owed by Defendant to Plaintiff for services provided by Plaintiff to Neal LeBaron Jones ("Defendant") and his Illinois Corporation, Sauk Valley Orthodontics P.C., f/k/a Neal Jones DDS, MS, PC, an Illinois Professional Corporation, because:

   a. The services were obtained by false pretenses, false representations, and/or actual fraud, and pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, Defendant is not entitled to a discharge of his debt owed to Dr. Patel;

   b. The services were obtained by fraud while acting in a fiduciary capacity and pursuant to Section 523(a)(4) of the Bankruptcy Code, Defendant is not entitled to a discharge of his debt owed to Dr. Patel; and/or Dr. Jones willfully and maliciously injured the Plaintiff and the Plaintiff's property, and pursuant to Section 523(a)(6) of the Bankruptcy Code, Defendant is not entitled to a discharge of his debt owed to Dr. Patel.

2. Defendant NEAL LEBARON JONES is an individual who is the debtor in Bankruptcy Case No. 4:15-bk-00508-BMW currently pending before this Court.

3. All actions complained of herein were undertaken on behalf of the community of Neal LeBaron Jones and Amy Melissa Jones and is therefore a community obligation.

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §157 and 1334(b), and 11 U.S.C. §523 and § 727.

5. This is a core proceeding as defined by 28 U.S.C. §157(b)(2)(I).

6. However, plaintiff does not consent to the entry of final judgment by the Bankruptcy Judge.

7. Venue is proper in this Court pursuant to 28 U.S.C. §1409.

GENERAL ALLEGATIONS

8. On January 27, 2011, Dr. Patel and Dr. Jones signed a two-year Agreement (the "Agreement") in which Dr. Patel agreed to provide orthodontic services in exchange for a monthly payment of $18,000. Dr. Jones signed in his capacity as president of what was then "Neal Jones, D.D.S., M.S., P.C., an Illinois Corporation."

9. The corporation changed its name to Sauk Valley Orthodontics, P.C. ("SVO") on or about April 24, 2013.

10. Under the terms of the Agreement, SVO supplied all tools, equipment and supplies. Dr. Patel agreed to work 12 days a month, between 8 and 11 hours per day. SVO agreed to pay Dr. Patel within 15 days after the close of each month. The Agreement also contained a worded Mediation/ Arbitration clause.

11. For most of the two-year term, Dr. Patel was the sole orthodontist at the practice. His duties involved treating SVO's patients. He also made calls to local dentists on behalf of SVO and provided on-site supervision to the office staff. He did not have the power to hire, fire or discipline the office staff. Dr. Jones trained him in SVO procedures and protocols.

12. In May 2013, SVO fell behind in making the monthly payments to Dr. Patel, and by August 30, 2013, SVO owed Dr. Patel $58,500.

13. There was such a unity of interest and ownership that the separate personality of SVO no longer existed apart from Debtor Dr. Jones and SVO was merely the alter ego of Debtor Dr. Jones because:

a. SVO was organized and carried on business without substantial capital so that it was likely to have no sufficient assets available to meet its debts, including to Dr. Patel;

b. SVO carried on business with disregard for corporate formalities, including, but not limited to:

   i. Dr. Jones formerly did business as "Sauk Valley Orthodontics." (doc. #1, p.1);

   ii. Dr. Jones used his personal social security number for Sauk Valley Orthodontics (doc #1, p.50)

14. Nonetheless, Dr. Patel had continued to work and fulfill the Agreement on his part because of the ongoing and multiple representations by SVO, and Debtor Dr. Jones personally, that Dr. Patel would be paid.

15. The representations made by SVO and Debtor Dr. Jones were false statements of material fact which Jones knew to be false in that at the time made:

a. Jones had no intention of paying Dr. Patel anything; or

b. In the alternative, Jones knew or should have known that SVO had no ability to pay Dr. Patel and could not and would not perform its obligation to pay Dr. Patel.

16. Dr. Patel had a right to rely on the statements made by Dr. Jones which were made by Dr. Jones in a fiduciary capacity as President of SVO.

17. Dr. Patel relied on the statements in deciding to continue working for SVO as he rightfully believed that if he continued to work SVO would pay his back wages and wages going forward.

18. Dr. Jones made such statements to induce Dr. Patel to continue working.

19. Dr. Patel's reliance on such statements led to injury in that Dr. Patel performed services which benefited and profited SVO and Dr. Jones personally but for which Dr. Patel was not paid.

20. As a direct and proximate result of Dr. Patel's reliance on the false statements of material fact Dr. Patel performed valuable services which benefited and profited SVO and Dr. Jones personally but for which Dr. Patel was not paid in the amount of $58,500.

21. Pursuant to the terms of the Agreement, the parties mediated the issue of back wages. The result was a Payment Schedule Sheet prepared by SVO on September 3, 2013. The Plan summarized the payments owed and laid out a repayment plan. SVO agreed to repay the total amount due in 18 monthly payments of $3,250 beginning September 15, 2013 (the "Repayment Agreement").

22. The Repayment Agreement was confirmed on behalf of SVO by Defendant Jones personally in a series of emails between Dr. Patel, Defendant Jones and Mike Squires, who prepared the payment schedule.

23. Dr. Patel continued to work and fulfill both the Agreement and the Repayment Agreement on his part because of the representations by SVO, and Defendant Jones personally, that Dr. Patel would be paid.

24. The representations made by SVO and Defendant Jones were false statements of material fact which Jones knew to be false at the time made:

    a. Defendant Jones had no intention of paying Dr. Patel anything once Dr. Patel had trained his replacement orthodontist; or

    b. In the alternative, Defendant Jones knew or should have known that SVO had no ability to pay Dr. Patel and could not perform its obligation to pay Dr. Patel.

25. Dr. Patel had a right to rely on the statements made by Dr. Jones which were made by Dr. Jones in a fiduciary capacity as President of SVO.

26. Dr. Patel relied on the statements in deciding to continue working for SVO as he rightfully believed that if he continued to work SVO would pay his back wages pursuant to the Repayment Agreement.

27. Dr. Jones made such statements to induce Dr. Patel to continue working.

28. SVO repaid $6,500 in September and October 2013, but then payments stopped. The balance due was $52,000.

29. Dr. Patel's reliance on such statements led to injury in that Dr. Patel performed services which benefited and profited SVO and Dr. Jones personally but for which Dr. Patel was not paid.

30. As a direct and proximate result of Dr. Patel's reliance on the false statements of material fact Dr. Patel performed valuable services that benefited and profited SVO and Dr. Jones personally, including, but not limited to, training another orthodontist in all aspects of the practice of SVO, but for which Dr. Patel was not paid the $52,000.

31. Dr. Jones diverted monies earned by Dr. Patel for SVO elsewhere, intentionally breaching his fiduciary duty as President of SVO to pay its creditors, including, but not limited to Dr. Patel.

32. Dr. Patel made his demand to SVO for arbitration on February 11, 2014.

33. When counsel for SVO advised that SVO would be filing for bankruptcy, on March 3, 2014, plaintiff advised AAA and counsel for SVO that plaintiff was amending his Demand for Arbitration to also include Dr. Neal L. Jones, the President, Secretary and sole shareholder of SVO pursuant to 820 ILCS 115/13 of the Illinois Wage Payment Act which provides that "any officers of a corporation or agents of an employer *who knowingly permit*

such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." (Emphasis added).

34. The matter proceeded to arbitration on April 16, 2014 as to both SVO and Dr. Jones.

35. On May 12, 2014, the arbitrator entered her Award (Exhibit A).

**Finding of Willful and Malicious Injury by Defendant Jones
to Violate the Provisions of the Illinois Wage Payment Act**

36. The arbitrator found:

> Section 13 of the (Illinois Wage Payment) Act, 820 ILCS § 115/13 *defines officers* of a corporation and agents of an employer *as "employers" when they knowingly permit the employer to violate the provisions of the Wage Payment Act*. Under these circumstances they may be held personally liable. Andrews v. Kawa Printing Corp., 351 Ill. App. 3d 668, 675 (4th Dist. 2004), aff'd, 217 Ill. 2d 101 (2005)…
> As a corporate officer of SVO, Dr. Jones had direct knowledge that SVO was violating the provisions of the Wage Payment Act. Applying the definitions and principles outlined above, Dr. Jones is a statutory employer under the Wage Payment Act and personally subject to the terms of the Agreement he and Dr. Patel signed on January 27, 2011. (Emphasis added).

37. The arbitrator also found:

> Based on the evidence, Dr. Patel has established all the elements necessary to establish joint and several liability under the Wage Payment Act; SVO and Dr. Jones are "employers" within the meaning of the statute; there was an employment contract or agreement, and Dr. Patel meets the definition of a "separated employee" due final compensation.

38. Dr. Jones willfully and maliciously injured the Plaintiff and the Plaintiff's property, in that:

a. When making his statements to Dr. Patel between May of 2013 and August 30, 2013 that Dr. Patel would be paid back wages and wages going forward, and also when Dr. Jones confirmed the Repayment Agreement, Defendant Jones had no intention of paying Dr. Patel anything, but made false statements of material fact, knowing that Dr. Patel would be injured by lack of payment;

b. Defendant Jones was found by the Arbitrator to have *knowingly* <u>permitted the employer to violate the provisions of the Wage Payment Act,</u> again knowing that lack of payment would harm Dr. Patel; or

c. In the alternative, Defendant Jones knew or should have known that SVO had no ability to pay Dr. Patel and could not perform its obligation to pay Dr. Patel, again knowing that harm to Dr. Patel for lack of payment was inevitable;.

39. Therefore, pursuant to Section 523(a)(6) of the Bankruptcy Code, Defendant is not entitled to a discharge of his debt owed to Dr. Patel.

## The Obtaining of Plaintiff's Services by False Pretenses, a False Representation, or Actual Fraud.

40. The arbitrator also found:

> *The injury was twofold:* failure to pay the $52,000 in compensation when it was due *and then a default after the parties negotiated a repayment plan.* The net result was the delay of wages owed for over a year. Under Section 2 …, Dr. Patel is entitled to interest on the cumulative underpayment from 6/15/13 through 5/15/14. He calculated interest at 2% for a total of $11,055. In addition, the Agreement provides for the award of reasonable attorneys' fees and costs, calculated at $5,400. Arbitration fees and costs total $2,175. (Emphasis added).

41. As shown above in paragraphs 12 – 30,

a. Dr. Patel's services were obtained by false pretenses, false representations, and actual fraud, and pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, and therefore Defendant is not entitled to a discharge of his debt owed to Dr. Patel;

b. Dr. Patel's services were obtained by Dr. Jones' fraud while acting in a fiduciary capacity and pursuant to Section 523(a)(4) of the Bankruptcy Code, Defendant is not entitled to a discharge of his debt owed to Dr. Patel;

42. The arbitrator published her award on May 12, 2014 (see Exhibit A).

43. When Defendant and SVO failed to pay the arbitrator's award, Plaintiff filed an action in the Circuit Court of Cook County, IL to confirm the award.

44. Defendant and SVO opposed the confirmation, but finally, on October 21, 2014, the Circuit Court confirmed the arbitration award. (See Exhibit B).

45. The judgment of the Circuit Court has not been appealed and is a final judgment entitled to full faith and credit pursuant to the U.S. Constitution.

46. SVO did not file for bankruptcy but closed its doors in December of 2014.

47. On January 20, 2015, Defendant Dr. Jones filed for Bankruptcy.

48. In his bankruptcy filing, Defendant:

    a. Did not list Plaintiff as a creditor;

    b. Did not disclose either the arbitration or the Circuit Court action;

    c. Misrepresented that Defendant/Debtor was doing business as Sauk Valley Orthodontics in an apparent attempt to obtain a discharge in his personal bankruptcy of the debts of an Illinois Corporation. Debtor also listed the Illinois corporate business under Debtor's personal social security number (doc #1, p.50);

    d. Listed "other names" as "FDBA Sauk Valley Orthodontics." In actual fact, Sauk Valley Orthodontics P.C. is a still active Illinois corporation having filed its annual report in November of 2014 listing Dr. Jones as President and Secretary. Debtor also lists the "other name" of "Desert Vista Orthodontics." The latter is actually an Arizona LLC with three locations in Sierra Vista, Douglas and Benson, Arizona. The Arizona LLC's members are Dr. Jones and Haws Dental Group LLC.

    e. Sauk Valley Orthodontics had multiple pieces of equipment in its location in Dixon, IL. None of those assets were listed and nothing was indicated as to their disposition;

f. Also, nothing listed in ¶ 10, p. 48 of any security interests, yet secured assets were sold in this court's ordered sale of assets of "FDBA Sauk Valley Orthodontics";

g. Check stubs indicate Dr. Jones was paying himself $5-6,500 per week, not bi-monthly as reported on Doc. #1, p. 39 of 70;

h. Dr. Jones' income appears to be underreported. Id., p. 45 of 70;

i. Dr. Jones apparently fraudulently transferred business interests in 2-3 dental practices in Arizona to his brother-in-law for only $15,000 on August 14, 2014. Id., p.48 of 70; and

j. Defendant/Debtor has at least one other source of income that is not listed.

49. As a direct and proximate result of the foregoing, pursuant to Section 727 of the Bankruptcy Code, Defendant should be denied a discharge in general for the reasons described in section 727(a) of the Bankruptcy Code, including transfer or concealment of property with intent to hinder, delay, or defraud creditors; destruction or concealment of books or records; perjury and other fraudulent acts; and failure to account for the loss of assets in violation of 11 US C §727(a)(2)(A), and (a)(4).

50. To the extent that Dr. Jones has concealed, destroyed, mutilated, falsified, or failed to keep and preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, he should be denied discharge pursuant to §727(a)(3).

WHEREFORE, Plaintiff RUCHIR PATEL, respectfully requests the Court to grant the following relief:

A. A determination that the debt to Plaintiff is not dischargeable under 11 U.S.C. § 523(a)(2)(A);

B. A determination that the debt to Plaintiff is not dischargeable under 11

U.S.C. § 523(a)(4);

C. A determination that the debt to Plaintiff is not dischargeable under 11 U.S.C. § 523(a)(6);

D. Deny discharge under 11 U.S.C § 727;

E. A determination that that the debt to Plaintiff is a community obligation of Neal LeBaron Jones and Amy Melissa Jones and grant judgment to Plaintiff against Neal LeBaron Jones and the community composed of Neal LeBaron Jones and Amy Melissa Jones

F. Any other relief the Court deems appropriate in the circumstances.

RESPECTFULLY SUBMITTED this 19th day of June, 2015.

| | |
|---|---|
| **James F. Kahn, P.C., dba** <br> **BANKRUPTCY LEGAL CENTER**™ | **MCQUILLAN LAW OFFICE LLC** |
| /s/ James F. Kahn, SBN003063 <br> James F. Kahn <br> Attorney for Ruchir Patel | /s/ Kevin K. McQuillan, IL ARDC#1869825 <br> Kevin K. McQuillan <br> Attorney for Ruchir Patel |